UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD M. CALHOUN,              )
                    Plaintiff    )
                                 )
                                 )
          v.                     )          Civil Action No. 10-30239-KPN
                                 )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security Administration,         )
                    Defendant    )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION TO
AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 11 and 17)
October 28, 2011

NEIMAN, U.S.M.J.

     This is an action for judicial review of a final decision by the Commissioner of the

Social Security Administration ("Commissioner") regarding an individual's entitlement to

Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. §§ 405(g).

Richard Calhoun ("Plaintiff") asserts that the Commissioner's decision denying him such

benefits -- memorialized in a June 22, 2010 decision of an administrative law judge -- is

not supported by substantial evidence. He has filed a motion for judgment on the

pleadings and the Commissioner, in turn, has moved to affirm.

     The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c);

Fed. R. Civ. P. 73. For the following reasons, the court will deny the Commissioner's

motion to affirm and allow Plaintiff's motion for judgment on the pleadings to the extent it

seeks a remand.

# I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

# II. BACKGROUND

Plaintiff filed for SSDI benefits on November 25, 2008.  (Administrative Record ("A.R") at 173-76.)  Plaintiff claimed that he was disabled due to morbid obesity, herniated discs, left and right shoulder problems, migraine headaches, and sleep apnea.  (A.R. at 16-17.)  Plaintiff did not claim that he suffered from any mental impairments.  (A.R. at 36.)  After Plaintiff's claim was denied both initially and upon reconsideration, he requested a hearing in front of an administrative law judge ("ALJ"), which occurred on June 22, 2010.  (A.R. at 24.)

At the time of the hearing, Plaintiff, forty-one years old, testified that he suffers from injuries to his left and right shoulders that render it impossible for him to reach over his head, lift heavy weights, or make repetitive motions, as well as from chronic pancreatitis and cervical radiculopathy. (A.R. at 44-46, 59-62.)   In addition, Plaintiff stated that he suffers side-effects from his medication including lightheadedness, dizziness, and an upset stomach and endures painful migraines and sleep apnea.  (A.R. at 43, 46, 47, 48, 66.)  Plaintiff also testified that he had completed three years of college at Springfield Technical Community College, attending class three days a week from 8 a.m. to around 11:30 a.m. or 12 p.m., and completing an hour's worth of reading homework after class each day.  (A.R. at 39-42.)  Finally, Plaintiff averred that he had previously worked as a forklift operator, a line technician, an auto lubrication technician, a machine operator, a mail handler, and a pipe fitter's assistant.  (A.R. at 35, 71.)

At the hearing, the ALJ asked Plaintiff to describe his physical limitations. Plaintiff responded that he is unable to lift more than twenty-five pounds with his left arm and cannot rotate his arm, reach over his head, or walk for long periods of time without suffering from severe migraine headaches.  Following this description and without

conferring with a vocational expert, the ALJ responded, "three jobs [] occur to me that might be jobs that you can do and indeed, my inclination is to assume you can do them full-time." (A.R. at 44.) The ALJ then listed the jobs (surveillance system monitor, information clerk, and visual inspector) and asked the vocational expert to explain each of them to Plaintiff. (Id.) After the vocational expert had described each job, the ALJ asked Plaintiff whether he believed he could perform each one. Plaintiff expressed concern about all of them due to the medications he was taking, and specifically indicated that he could not serve as an inspector because it appeared to require repetitive motion. The vocational expert agreed, and the ALJ instead asked about yet another job, a parking lot attendant. The vocational expert responded that a parking lot attendant would not require repetitive motion. (A.R. at 46.)

Following Plaintiff's testimony, the ALJ posed to the vocational expert a hypothetical involving an individual with Plaintiff's age, education, and work experience and with the following physical limitations: capable of light work with a sit/stand option, no overhead reaching, unfettered discretion as to how long and how frequent postural changes could occur, and no repetitive use of upper extremities. (A.R. at 77-78.) The vocational expert opined that Plaintiff could perform three of the jobs previously discussed, noting that the surveillance system monitor is a sedentary job and that the information clerk and parking lot attendant require light exertion. (A.R. at 78.)

Plaintiff's attorney then asked the vocational expert whether an individual who had to be "off task of a job" at least twenty-five percent of a work day due to side effects of medication and chronic pain would still be able to perform any of the aforementioned jobs. The vocational expert responded that such a person would not be so able. (A.R.

at 79.)  Plaintiff's attorney also asked whether an individual who misses three or more days per month for the same reasons would be able to perform the aforementioned jobs.  The vocational expert replied that industry standard allows "up to two excused absences a month so if someone's out of work three days a month, it would preclude any type of work activity."  (Id.)[1]

In a decision dated June 22, 2010, the ALJ denied Plaintiff's claim.  (A.R. at 14-24.)  While acknowledging Plaintiff's testimony that he suffers from migraine headaches and sleep apnea, the ALJ found that both of these conditions were not severe.  (A.R. at 16 n.1.)  Moreover, the ALJ found not credible Plaintiff's subjective allegations of pain because he failed to follow medical advice and had engaged in conduct inconsistent with his claimed disability.  (A.R. at 21.)  Thus, although the ALJ found that Plaintiff faces certain physical limitations, he nonetheless concluded, in light of the adverse credibility determination and the contradictory medical evidence, that Plaintiff was not disabled because he could "engage in some manner of substantial gainful activity." (A.R. at 21-24.)

Plaintiff was initially informed that the Commissioner's Decision Review Board had selected the ALJ's decision for review.  (A.R. at 1.)  However, because the Board failed to complete its review of Plaintiff's claim within ninety days, the ALJ's decision became final on November 4, 2010.  (Id.)  In due course, Plaintiff filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the

---

[1] Although immaterial for present purposes, the court notes that Plaintiff's counsel's questions to the vocational expert -- concerning individuals who are "off task" twenty-five percent of a work day and who would need to miss three or more days per month due to chronic pain -- do not appear to be supported by the record.

cross-motions currently at issue.

III. DISCUSSION

An individual is entitled to SSDI benefits if, among other things, he has an insured status and, prior to its expiration, is disabled.  *See* 42 U.S.C. § 423(a)(1)(A) and (D).  Plaintiff's insured status has not been challenged.

A.  Disability Standard and the ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  *See also* 42 U.S.C. § 1382c(a)(3)(A) (similar).  An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed?  If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment?  A "severe impairment" means an impairment "which

6

significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

. . . .

Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability (question 1); he has impairments which are "severe," namely, morbid obesity, cervical stenosis/degenerative disc disease and herniated discs, status post left-shoulder arthroscopy, and distal supraspinatus tendinopathy of the right shoulder, but those impairments do not meet or medically equal one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (questions 2 and 3); and he has the residual functional capacity to perform light work, as long as he would be provided a sit/stand option whose duration and frequency of postural changes would be at his discretion, would not be required to do any overhead reaching, and would not use his upper extremities repetitively. (questions 4 and 5). Accordingly, the ALJ determined that Plaintiff was not disabled. (A.R. at 16-24.)

B. <u>Plaintiff's Challenge to the ALJ's Decision</u>

Plaintiff makes three arguments in support of his motion: first, that the ALJ's 's adverse credibility determination was flawed; second, that the ALJ erroneously found that his migraine headaches were not a severe impairment; and finally, that the ALJ's residual functional capacity assessment is contradicted by his medical evidence.  In response, the Commissioner asserts that the record supports the ALJ's findings.  The court finds Plaintiff's first argument particularly persuasive and, on that basis alone, will grant Plaintiff's motion to remand.

In finding Plaintiff not credible, the ALJ first noted that, despite the fact that Plaintiff was advised to stop smoking and lose weight, he "had taken no substantial efforts" to do either.  (A.R. at 21.)  On this score, the ALJ especially relied on a letter from Dr. Natasha McKay, which indicated that "she was unlikely to operate on him given his excessive weight."  (A.R. at 21, 389.)  The ALJ thus concluded that Plaintiff's testimony regarding his pain was not credible because, despite Dr. McKay's warning that she would not perform an operation that would alleviate his pain until he lost weight and quit smoking, he failed to take any steps to do so.  (A.R. at 21.)  The court disagrees.

 Social Security Ruling ("SSR") 96-7p permits an ALJ to find statements "less than credible . . . if the individual is not following *prescribed* treatment without good reason."  (emphasis added).  Here, however, Plaintiff consistently testified that he was never told that any operation that might alleviate his pain was contingent on him losing weight or quitting smoking.  (A.R. at 61, 77 (testifying that he was never advised that any failure to lose weight or quit smoking "would prohibit [Dr. McKay] from doing any

type of work" and that any such advice "had nothing to do with surgeries or anything like that.")) Plaintiff acknowledged that Dr. McKay advised him that he needed to change his habits, but only because it would be "better for [his] health." (A.R. at 61.)

Given the evidence in the record, Plaintiff's version of events is quite plausible. Dr. McKay's letter indicates that she was not convinced that the surgery would be necessary, or even beneficial for Plaintiff. Instead, she believed that the proper course was to "refer him to physical therapy for a trial of traction and a home exercise program." (A.R. at 389.) Only if that regimen failed, she indicated, might she "have to consider an ACDF" and further, that, if such a procedure was necessary, she "would like to hold off until [Plaintiff] loses weight and quits smoking." (Id.) Thus, Dr. McKay's letter suggests that, although she might prefer that Plaintiff lose weight and stop smoking before any surgery, his failure to do so would not necessarily prevent her from performing the surgery. Moreover, as Dr. McKay's follow-up report indicates, she ultimately determined that Plaintiff would not benefit from the surgical procedure. (A.R. at 415.) This is entirely consistent with Plaintiff's testimony that Dr. McKay never discussed the effects of his habits on his ability to undergo the surgical procedure. The ALJ's conjectures to the contrary are unsupported by the record and violative of the Commissioner's interpretive rulings. See SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.").

Even assuming that Dr. McKay had advised Plaintiff to quit smoking and lose weight in the event surgery became necessary, remand would still be appropriate. The

mere fact that a physician *suggests* a procedure does not necessarily mean that she

has *prescribed* it. *See Cooley v. Astrue*, No. CV 10-03432-MAN, 2011 U.S. Dist. LEXIS

69234, at *13-14 n.3 (C.D. Cal. 2011) (remanding an ALJ's adverse credibility

determination because it is "improper to deny benefits on the basis of declined surgery,

when surgery is only a *suggested* rather than a *prescribed* course of treatment.")

(emphasis in original) (internal quotation marks omitted); *see also Philips v. Barnhart*,

421 F. Supp. 2d 272, 280 (D. Mass. 2006) (remanding because ALJ's adverse

credibility determination based on Plaintiff's failure to follow his doctor's advice to lose

weight was "too superficial" and noting that SSR 02-01p states that the Commissioner

"will rarely use 'failure to follow prescribed treatment' for obesity to deny . . . benefits.").

No such prescription is evident in the record here. At best, Dr. McKay's letter states

that Plaintiff might have to lose weight and quit smoking *if* the physical therapy fails and

she determines that Plaintiff needs surgery; moreover, her later report indicates that she

no longer believed surgery would benefit Plaintiff. Thus, any direction to Plaintiff to lose

weight and quit smoking appears to have been monitory only.

The court also finds flawed the ALJ's determination that Plaintiff was not credible

because he engaged in activities inconsistent with his alleged physical limitations. At

the hearing, the ALJ made much of the fact that Plaintiff had attended college full-time

for three years, at one point asking Plaintiff flatly if he perceived "any inconsistency" in

his position that he attended school but could not find full time employment. (A.R. at

34.) Plaintiff testified that he attended class for three hours a day, three days a week,

and typically completed an additional hour of homework each night. (A.R. at 38-42, 73-

74.)

In light of this testimony, the ALJ concluded that Plaintiff's complaints of pain and inability to work were not credible because they were inconsistent with "a legitimate claim of disability." (A.R. at 21.) As Plaintiff's attorney argued at the hearing, however, Plaintiff attended school before he had subsequent shoulder injuries and the migraine headaches from which he now suffers. Plaintiff's attorney also contended that it was unfair to compare attending school for nine hours a week and completing nine hours of homework at home to full-time employment. (A.R. at 73-74.) The ALJ, however, did not address these arguments, either at the hearing or in his decision. Indeed, the ALJ points to no evidence in the record whatsoever to support his conclusion that Plaintiff could not attend full-time school while also suffering the degree of pain and physical limitations of which he complained. The court therefore concludes that the substantial evidence standard has not been met.[2]

Finally, the court notes certain irregularities in the ALJ's proceedings, which, although insufficient to warrant remand in and of themselves, merit some discussion. First, as indicated, the ALJ, after listening to Plaintiff describe his physical limitations and without conferring with the vocational expert, listed three jobs that *he* believed Plaintiff was capable of performing; only afterward did he ask the vocational expert to

---

[2] In determining how many hours Plaintiff spent on school, the ALJ concluded that he spent "about 18 hours or so a week." (A.R. at 74.) In arriving at that estimate, the ALJ appears to have mistakenly calculated that Plaintiff attends class for three hours and completes three hours of homework each night. However, Plaintiff's testimony indicated that he attends classes for either three and one half or four hours and spends only one additional hour each night completing his homework. (A.R. at 41.) Taking into account Plaintiff's testimony, the court estimates that the actual time Plaintiff spent attending class and completing homework is probably closer to fifteen hours per week.

explain those jobs. (A.R. at 44-45.) When Plaintiff answered that one of the jobs appeared to require repetitive motion, the ALJ, again without first conferring with the vocational expert, replaced it with yet another job. (A.R. at 46.) Although the vocational expert later testified that Plaintiff could perform these jobs, (A.R. at 77-78), it does appear that, to a great extent, the ALJ was acting as his own expert.

Second, at numerous times during the proceeding, the ALJ addressed Plaintiff's attorney simply as "Tricia" (A.R. at 52, 53, 55, 57, 70, 71, 79), and the vocational expert as "Bob." (A.R. at 36, 37, 44, 46, 71, 79.) Although such administrative hearings do not have the formality of court proceedings, *see Cline v. Sec'y of Health, Educ. & Welfare*, 444 F.2d 289, 291 (6th Cir. 1971) ("The law does not require that a proceeding before the Social Security Administration be conducted with the same formalities and rules of evidence as court proceedings."), the informality utilized by the ALJ here, particularly regarding a witness who may testify adversely to a claimant, raises questions about the hearing officer's neutrality. Suffice it to say that, in the court's view, such conduct could undermine confidence in the agency's proceedings.

IV. CONCLUSION

For the reasons stated, Plaintiff's motion to remand is ALLOWED to the extent it seeks a remand for a new hearing, and the Commissioner's motion to affirm is DENIED. SO ORDERED.

DATED: October 28, 2011

 /s/  Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge